Lisa **LEIPHART**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 25, 2009.
Decided March 23, 2009.

Alan C. Ostrow, Philadelphia, for appellant.

Nancy D. Wasser, Philadelphia, for appellee.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying its motion for judgment notwithstanding the verdict (j.n.o.v.) and finding it liable to Lisa Leiphart (Leiphart) for injuries she sustained on City streets. For the reasons stated below, we reverse the trial court's order.

On October 31, 2005, Leiphart was crossing Chestnut Street in Philadelphia between 15th and 16th Streets when she tripped and fell on a raised portion of Chestnut Street resulting in serious injuries.[1] The raised portion of Chestnut Street was the result of past excavation work by a permit recipient. Prior to Leiphart falling, the City had issued five excavation permits over a three-year period. It had also issued permits to PECO Energy Company (PECO) and Philadelphia Gas Works (PGW) within two years before Leiphart fell. It further issued two permits to Henkels & McCoy as agents and contractors for PECO and two permits to JMS/ULS as agents for PGW. Henkels & McCoy then subcontracted all of its excavation work to Walter Rowe, Inc. The City also issued a permit to a Comcast contractor. The recipient of one of these permits did not properly flatten Chestnut Street after performing work.

Leiphart filed a complaint against the City, the Commonwealth of Pennsylvania, Department of Transportation (PennDot), PECO and PGW alleging that the City and its employees and other defendants acting

---

1. Leiphart fractured her patella requiring two surgeries and, as a result, developed deep vein thrombosis causing multiple blood clots which required an inferior vena cava to be surgically inserted to prevent further clotting.

within the scope of their employment were responsible and liable for the condition of the road; the dangerous, unsafe and defective condition of the road consisted of, *inter alia,* an uneven road surface and hump in the road causing a variance in the height of the roadway which existed for a long time prior to the date of the accident because it appeared to be an unfinished repair and defendants should have known of its existence; their negligence caused the condition; they failed to warn Leiphart of the condition; they failed to adequately maintain the street and make the necessary and proper repairs; and solely by their negligence caused Leiphart's injuries. The City filed an answer with new matter denying the allegations and under new matter arguing that it was immune from suit under the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542, and that any injuries sustained by Leiphart were due to her own negligence.[2]

The City filed a motion for summary judgment which Leiphart opposed and was denied by the trial court by order dated January 4, 2008. The case was scheduled to begin trial on March 4, 2008. Prior to trial, Leiphart settled her claims against all of the defendants except the City. Because the City was the only remaining party and the dispute was limited to the issue of the City's liability, the parties requested a bench trial on that issue. The trial court judge agreed and Leiphart waived her right to a jury trial. A compromise was reached on the amount of damages in exchange for the agreement that both parties would be bound by the trial court judge's decision and if liability was found, the City would pay $90,000 to Leiphart within 10 days of that judgment.

The trial court found the City liable under the streets exception of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(6),[3] for a dangerous and defective condition because

2. PECO and PGW individually filed preliminary objections which were overruled. PECO filed a joinder complaint against Henkels & McCoy, Comcast and Walter Rowe, Inc. Comcast filed a motion for summary judgment which was granted as uncontested. The parties stipulated to dismiss JMS/ULS.

3. 42 Pa.C.S. § 8542(b)(6) provides the following:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . .

(6) *Streets.*-

(i) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

(ii) A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies, if all of the following conditions are met:

(A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:

(i) had not expired or been otherwise terminated prior to the occurrence of the injury; or

(ii) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.

(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.

(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have

it owned Chestnut Street. Citing *Walker v. Eleby*, 577 Pa. 104, 842 A.2d 389 (2004), it stated that there was no dispute that Chestnut Street, which was previously designated as a "state highway" by our General Assembly, was actually owned by the City as determined by our Supreme Court. The trial court went on to explain that it was undisputed that Leiphart fell due to the raised condition of Chestnut Street resulting from excavation work overseen by the City (the dangerous condition); the City had inspected all work so that the risk of a trip and fall was reasonably foreseeable and that the City had actual notice of the hazard; and that the City had sufficient time to correct the hazard or even close Chestnut Street if a dangerous condition existed. The trial court disputed the City's argument that a written contract had to be present between the City and the Commonwealth, 42 Pa.C.S. § 8542(b)(6)(ii)(A), because "the City of Philadelphia must be deemed to own Chestnut Street." (Trial Court's August 13, 2008 decision at 6.) The trial court

then ordered the City to pay Leiphart $90,000 within 10 days. This appeal by the City followed.[4]

■ The City contends that the trial court erred in finding that the City owned Chestnut Street within the meaning of the street exception set forth in 42 Pa.C.S. § 8542(b)(6)(i) of the Tort Claims Act.[5] It argues that Chestnut Street as a state highway is not owned by the City but by the Commonwealth, because once the Commonwealth assumes jurisdiction, local agencies, such as the City, are no longer responsible for the maintenance of the roadway. Instead, the Commonwealth agency assumes liability, and absent a contract placing liability on the local agency, the agency is not liable.

In determining the ownership of Chestnut Street for the purpose of determining liability under the Torts Claim Act, we begin our analysis with Section 102 of the State Highway Law, Act of June 1, 1945, P.L. 1242, 36 P.S. § 670–102, which defines "state highway" as follows:

---

taken measures to protect against the dangerous condition.

4. "An appellate court's scope of review with respect to whether JNOV was appropriate is plenary, as with any review of questions of law. *Shamnoski v. PG Energy, Div. of Southern Union Co.*, 579 Pa. 652, 858 A.2d 589 (2004). The proper standard of review when examining a lower court's refusal to grant JNOV 'is whether, when reading the evidence in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict.' " *Gehres v. Falls Township*, 948 A.2d 249, 251, n. 1 (Pa.Cmwlth.2008).

5. "In order for liability to be imposed on a local agency, 42 Pa.C.S. § 8542(a) sets forth three conditions that must be met: First, the damages must be recoverable under common law or a statute creating a cause of action if the injury was caused by a person not having available a defense under 42 Pa.C.S. § 8541. Second, the injury must have been caused by

the negligent acts of the local agency or an employee of the local agency acting within the scope of his or her office or duties. Finally, the negligent action must fall within one of the exceptions to governmental immunity set forth in 42 Pa.C.S. § 8542(b)." *Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394 (2000). The plaintiff has the burden of demonstrating that all three conditions have been met. To establish that the City's negligence falls within the streets exception contained in 42 Pa.C.S. § 8542(b)(6)(i), a plaintiff must also prove that:

- A dangerous condition of the street existed;
- It was owned by the local government;
- The condition created a reasonably foreseeable risk of the kind of injury that occurred;
- The local government had actual notice or could be charged with notice under the circumstances of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

"State highway" shall mean and include all roads and highways taken over by the Commonwealth as State highways under the provisions of any act of Assembly. Unless clearly so intended, the term **shall not include any street in any city,** borough or incorporated town, **even though the same may have been taken over as a State highway.** (Emphasis added.)

As the trial court noted in its decision, that portion of Chestnut Street where Leiphart fell was designated as a state highway:

> All or part of the following various public highways ... [shall be] adopted by the Commonwealth as a State highway ... Route 67318. Beginning at the intersection of Schuylkill Expressway and Chestnut Street; thence easterly on Chestnut Street to the intersection of Chestnut Street and Sixth Street, beginning again at the intersection of Chestnut Street and Fifth Street; thence easterly on Chestnut Street and Delaware Avenue, a distance of about 2.2 miles.

> *See* Laws of the General Assembly of the Commonwealth of Pennsylvania, State Route 3008 and Legislative Route 67318, Act No. 615, Sept. 16, 1961.

Because Chestnut Street is a state highway, it is not owned by the City but rather by the Commonwealth/PennDot. Section 204 of the State Highway Act of 1961, 36 P.S. § 1758–204, provides that streets "taken over by the Commonwealth shall be maintained, constructed, reconstructed and resurfaced" by the Commonwealth. By so stating, the General Assembly took over

ownership of the "street," the roadway portion of the right-of-way, and the City is not liable for injuries that occurred as to negligent maintenance of the right-of-way except where the City has by written agreement agreed to maintain the state road. 42 Pa.C.S. § 8542(b)(6)(ii).

Notwithstanding that the Commonwealth has assumed maintenance responsibilities for state highways, relying on language in *Walker v. Eleby,* Leiphart argues that state highways are still owned by the City. In *Walker,* a plaintiff brought an action under the **sidewalk** exception to immunity set forth in 42 Pa.C.S. § 8542(b)(7), and the issue was whether the City was liable for injuries on sidewalks abutting state highways, not for injuries that occurred on state highways. In answering that question, while our Supreme Court did state in Walker that "the City owned the streets," what it was referring to was the public right-of-way which the City owed in trust for public use for public purposes. Public purposes include the right to travel as well as additional uses for other public purposes, such as utilities. *In re City of Altoona,* 479 Pa. 252, 388 A.2d 313 (1978); *46 South 52nd Street Corp. v. Manlin,* 398 Pa. 304, 157 A.2d 381 (1960); *Breinig v. Allegheny County,* 332 Pa. 474, 2 A.2d 842 (1938).

In this case, the state, by statute, has assumed ownership of that portion of the right-of-way that was the paved roadway, divesting the City of any "ownership" in it. The City does not own the paved roadway portion of the right-of-way in a state highway anymore than it owns the electric or cable facilities that also occupy the City's right-of-way.[6] *Jackson v. City of Philadel-*

---

6. Moreover, our Supreme Court in *Walker* stated that "[o]ur decision today is limited to sidewalks abutting designated state highways located in cities of the first or second class, where the street and sidewalk were already in existence at the time of the designation as a

state highway and were not built or required to be built by the Commonwealth. We are aware that not all sidewalks abutting state highways are governed by the same construct under the State Highway law." *Walker,* 577 Pa. at 125, 842 A.2d at 402.

**1244** ■ 

*phia,* 782 A.2d 1115 (Pa.Cmwlth.2001). This is consistent with our holdings in other cases that the City is not liable for injuries that occur on state highways. *See Leone v. Department of Transportation,* 780 A.2d 754 (Pa.Cmwlth.2001); *Slough v. City of Philadelphia,* 686 A.2d 62 (Pa. Cmwlth.1996); *Phillips v. City of Philadelphia,* 148 Pa.Cmwlth. 175, 610 A.2d 509 (1992).

■ If she failed to establish that the negligence did not fall within the ambit of 42 Pa.C.S. § 8542(b)(6)(i), Leiphart contends that the City is liable under subsection (ii) of 42 Pa.C.S. § 8542(b)(6), which imposes liability where the City has agreed to maintain and repair a state highway. To fall within that exception to immunity, Leiphart had to prove, among other things, the existence of a written contract between the City and PennDot for the maintenance and repair of Chestnut Street. While acknowledging that she did not present any evidence of a contract between the Commonwealth/PennDot and the City, Leiphart contends that the City is precluded from arguing the absence of a contract between the City and the Commonwealth because it failed to specifically raise this defense prior to trial, and she had no ability to defend against this defense until close to trial when the City first mentioned it in an answer to request for admissions.

In *Leone,* PennDot notified the City that a plumber's ditch had been left in an unsafe condition; a City employee attempted to repair the ditch but could not due to weather; the employee reported to the City that he made a partial repair, but the City's records indicated that the ditch had been made safe. Leone was injured and sued the City and the Commonwealth under 42 Pa.C.S. § 8542(b)(6). We stated: "A review of the record reveals that Appellants failed to present. any evidence that the Commonwealth had 'contracted with the City for the maintenance and repair of Torresdale Avenue, a state highway. Further, the correspondence between Penn-Dot and the City does not represent a contractual relationship regarding road maintenance as required to invoke the street exception. Thus, the trial court was correct in determining that Appellants cannot invoke the streets exception to the Act." *Id.,* 780 A.2d at 758. Because Leiphart failed to produce any evidence that a contractual relationship between the City and the Commonwealth/PennDot existed, it did not prove that her action fell within the exception to immunity contained in 42 Pa.C.S. § 8542(b)(6)(ii).[7]

Accordingly, the order of the trial court is reversed.[8]

### ORDER

AND NOW, this 23rd day of March, 2009, the order of the Court of Common Pleas of Philadelphia County, dated May 22, 2008, denying Appellant's request for a judgment n.o.v., is reversed.

---

7. To the extent that Leiphart contends that the City failed to specifically plead that there was not a written agreement that it would maintain Chestnut Street, she never pled that a written contract was a basis for falling within streets exception to immunity.

8. Finally, Leiphart argues that the City waived its right to appeal the trial court's decision by entering into an oral agreement to be bound by the trial court's finding. Because there is nothing in the record to indicate such an agreement exists, there is nothing to support Leiphart's contention and we will not address it.